# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
MULLIGAN, FEBBO, and SCHASBERGER
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Specialist VICTOR J. FERNANDEZ**
**United States Army, Appellant**

ARMY 20160688

Headquarters, Joint Readiness Training Center and Fort Polk
Douglas K. Watkins, Military Judge
Lieutenant Colonel Christopher L. Burgess, Staff Judge Advocate

For Appellant:  Lieutenant Colonel Tiffany M. Chapman, JA; Major Todd W. Simpson, JA; Captain Augustus Turner, JA (on brief).

For Appellee:  Lieutenant Colonel Eric K. Stafford, JA; Captain Joshua Banister, JA (on brief).

16 November 2018

---------------------------------
MEMORANDUM OPINION
---------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

SCHASBERGER, Judge:

Specialist Victor J. Fernandez appeals his convictions of desertion, rape of a child, attempted rape of a child, and sexual abuse of a child, asking us to set aside his guilty plea.  Appellant alleges that his trial defense counsel were ineffective in that they failed to investigate, coerced him to plead guilty, and coached him into false and misleading testimony.  We ordered affidavits from the trial defense counsel who represented appellant.  We find no unethical behavior on the part of the defense counsel and conclude that their representation was not ineffective.

A military judge sitting as a general court-martial convicted appellant, pursuant to his pleas, of one specification of desertion terminated by apprehension, two specifications of rape of a child under the age of twelve, one specification of sexual abuse of a child under the age of twelve, and one specification of attempted rape of a child under the age of twelve, in violation of Articles 80, 85, and 120b, Uniform Code of Military Justice, 10 U.S.C. §§ 880, 885, and 920b (2012) (UCMJ). The military judge sentenced appellant to confinement for nineteen years and a

dishonorable discharge. The convening authority approved the adjudged sentence and credited appellant with 318 days of confinement credit.

We review this case under Article 66, UCMJ. Appellant's sole assignment of error is a claim of ineffective assistance of counsel. Appellant also personally asserts additional errors pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982).[1] After a review of the entire record, to include numerous appellate exhibits, supplemental briefs, and affidavits, we find the decisions of the trial defense counsel were reasonable and affirm the findings and sentence.

**BACKGROUND**

Around midnight on 11 September 2015, in their quarters at Fort Polk, Louisiana, appellant's wife, JR, heard the door to her five-year-old daughter SR's room open. She went to investigate and saw appellant hunched over SR's bed with SR's pajama bottoms removed and her buttocks exposed. JR demanded to know what was going on and appellant stated, "Since I couldn't be with you, I just wanted to be with my little girl."[2] JR immediately told a neighbor who called the military police. The police apprehended appellant that night.

On 16 September 2015, SR gave a statement to clinicians at the Rapides Child Advocacy Center (CAC). In her statement, SR described numerous sexual acts involving appellant. Among the sexual acts that SR described were occasions where appellant touched her "pee-pee," had her touch his "pee-pee," touched himself, and attempted to insert his "pee-pee" into hers. SR also recounted seeing a video of her mother performing oral sex on appellant.

In October 2015, appellant left Fort Polk without authority. He eventually went to California. In December 2015, appellant was arrested by the California police and detained for carrying a concealed handgun and being a deserter. He was subsequently transferred back to military control where he was placed into pretrial confinement.

In January 2016, the government charged appellant with committing numerous sexual offenses against both JR and SR. The government based these charges on statements made by JR and SR, DNA evidence taken from SR's bed, a cell phone video taken on appellant's phone, and the medical exam of SR. The time span for the charged offenses involving SR was between April and September 2015.

---

[1] To the extent these alleged errors do not overlap with our analysis below, they do not warrant any further discussion or relief.

[2] SR was appellant's step-daughter.

Appellant's initial military defense counsel, Captain BB, was scheduled to leave the military. In addition to CPT BB, the senior defense counsel at Fort Polk, MAJ CM, was detailed to the case. Major CM was undergoing a medical evaluation board during this timeframe. Appellant subsequently hired civilian defense counsel, AC and CC. Appellant released CPT BB and the senior defense counsel detailed CPT ND to the case.

Appellant told his defense counsel that he was innocent. Additionally, appellant told them he believed that AR, JR's first husband and the father of SR, could have assaulted SR. Further, appellant told his defense counsel that SR was visiting AR for the summer (and thus was not in Louisiana), so it was impossible for him to have committed any crimes involving SR during the charged timeframe. As to the semen and DNA in SR's bed, appellant maintained it was from having sex with his wife in that bed when SR was away.

Appellant also asked his defense counsel about the likelihood of conviction. When told the chances of a conviction were high, appellant and his defense counsel discussed the possibility of a plea deal. AC told appellant he could not plead guilty if he maintained that he was innocent. AC also told appellant that he did not have to remember committing the crime if, after looking at the evidence, appellant believed that he was guilty.

Appellant told his defense counsel that he had a history of excessive alcohol consumption. He frequently drank large quantities of alcohol and "blacked out" (i.e. he could not remember things he did or said). For example, on prior occasions, appellant had sex with his wife and did not remember. Appellant also had numerous conversations that he did not remember.[3]

In consulting with his defense counsel, appellant alternated between stating he was innocent and asking about the possibility of a deal that would limit his confinement to under 20 years. Appellant eventually entered into a pretrial agreement to plead guilty to some of the charged offenses in exchange for the convening authority dismissing several charges, including all of the sexual abuse and assault allegations against his wife, and capping his amount of confinement at 22 years. Once securing the deal that he wanted, appellant did not mention his innocence again to any of his defense counsel.

As part of his pretrial agreement, appellant entered into a stipulation of fact which was admitted at trial. In this stipulation, appellant admitted to the underlying facts for each of the charges to which he pleaded guilty. Additionally, appellant

---

[3] At trial and in the stipulation of fact, appellant gave specific details of his drinking.

3

acknowledged the variance in the date range of when these events took place but stated that the extended date range was "fairly included."

At trial, appellant repeatedly told the military judge that he had no recollection of the alleged events but had viewed the evidence and believed SR's account of what happened. Appellant ascribed his lack of memory to his alcohol use. He described to the military judge how he would black out and have no memories. Appellant stated that he believed SR's statement from 16 September 2015 and the statements she made to medical personnel. For each charge and specification, appellant told the military judge exactly what evidence he believed, pointing to specific statements that SR made at the CAC or while undergoing her medical exam. Appellant did not adopt SR's November 2015 statement, and he challenged the veracity of parts of that statement as he thought SR was "manipulated."

The military judge discussed the viability of several defenses with appellant. As part of this colloquy, appellant specifically disavowed voluntary intoxication and lack of mental responsibility. Appellant also disavowed any coercion in pleading guilty. He stated he was satisfied with his attorneys. The military judge found that appellant knowingly and voluntarily pleaded guilty.

## LAW AND DISCUSSION

To establish an ineffective assistance of counsel claim, which we review de novo, an appellant must show: "(1) his counsel's performance fell below an objective standard of reasonableness; *and* (2) the counsel's deficient performance gives rise to a 'reasonable probability' that the result of the proceeding would have been different without counsel's unprofessional errors." *United States v. Akbar*, 74 M.J. 364, 371 (C.A.A.F. 2015) (quoting *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984)) (emphasis in original).

When we evaluate the first *Strickland* prong, we "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." 466 U.S. at 689. Appellant has the burden to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. at 687; *see also Harrington v. Richter*, 562 U.S. 86, 104 (2011).

Appellant's claim regarding ineffective assistance of counsel has several parts. More specifically, appellant claims: (1) his defense team did not investigate leads; (2) his defense counsel coerced him into pleading guilty; and (3) his defense counsel suborned perjury during his guilty plea. After reviewing the record, we find that none of these claims have merit or warrant additional fact-finding.

First, in regards to the alleged failure to investigate, we are convinced by the explanations provided in the various defense counsel affidavits. All defense counsel acknowledge that appellant provided information which led to helpful evidence.[4] For example, they acknowledge appellant gave them information which established that either SR was gone or appellant was away during a large majority of the time period charged. Appellant also told them to investigate AR; the defense counsel did and found evidence to support appellant's allegations that AR may have abused SR and possibly other children. Appellant further asked the defense team to look into credibility issues with JR. The defense team found JR did have credibility issues, but they also found that several of her allegations were corroborated by witnesses who did not have credibility issues. In sum, even with all of appellant's information, leads, and suggestions, the defense counsel did not believe that this information was enough to overcome the strength of the government's evidence.

Second, though appellant may have subjectively felt "coerced" into pleading guilty, the objective facts do not support his assertion. Appellant was facing a maximum sentence of life without the eligibility of parole. Appellant's defense counsel, including the senior defense counsel at Fort Polk and an experienced civilian defense counsel, evaluated the government's chance of convicting appellant as being high. Upon our review of the record of trial and evidence therein, this evaluation appears reasonable.[5] Telling an accused that the evidence against them is strong and the potential penalties for a conviction are great is not coercion.[6]

Third, as to the allegation that the civilian defense counsel and rest of the defense team suborned perjury, we find no evidence that the defense team believed appellant to be lying when he testified that he could not remember committing the offenses but had reviewed the evidence and believed the evidence. The defense counsel agree that appellant originally stated that he was innocent, but wanted a deal that would cap his confinement at under 20 years. Appellant also told his defense

---

[4] None of the defense counsel remember telling appellant that the system was corrupt or that "proof of his innocence would not matter." Instead, they believe that appellant interpreted their explanations of how in some circumstances an innocent man can be convicted as meaning the system is corrupt.

[5] As part of the guilty plea, the government dismissed all of the allegations regarding various assaults on JR. We are unable to evaluate whether the evidence for those allegations is as strong as the evidence regarding the offenses against SR.

[6] Appellant also alleges his counsel contacted his mother as part of his attempt to get him to plead guilty. Even if we did not believe the defense counsel's explanation of the conversations with appellant's mother, this would not change the fact that telling one's client their chances of acquittal are slim and the potential punishment is high is not coercion.

counsel that he frequently drank to excess and had memory gaps. Prior to trial, the defense counsel had conversations with appellant regarding the requirement that he would have to believe that he was guilty or he could not plead guilty. Given the nature of appellant's guilty plea in this case, in which he maintained that he had no recollection of the events but believed SR after reviewing the evidence, we find no reason to believe that his defense team thought he was lying during the providence inquiry.

We have also considered whether we are required to remand this case for a post-trial fact-finding hearing. In applying the framework outlined in *United States v. Ginn*, 47 M.J. 236, 248 (C.A.A.F. 1997), we are mindful there are "circumstances under which a *DuBay* hearing is required to resolve a post-trial claim that is framed by conflicting affidavits." *United States v. Fagan*, 59 M.J. 238, 241 (C.A.A.F. 2004). We conclude that no post-trial hearing is necessary in this case.

For this analysis, *Ginn* sets out five factors to consider: in this case, the issues raised by appellant are covered by the third and fifth *Ginn* factors.

For the third *Ginn* factor, there is no requirement for a post-trial hearing if the government "either does not contest the relevant facts or offers an affidavit that expressly agrees with those facts," and the issue turns on a claim of legal error. 47 M.J. at 248. In this case, the defense counsel's affidavits expressly agree that appellant provided them with specific evidence and information to support his defense. This included, among other things, providing information that SR was located in a different state during most of the time period charged.

Critically, in their affidavits, the defense counsel explained they received this information, investigated the case, and still concluded there was a high likelihood of conviction based on the overall evidence. We find the defense counsel's analysis to be sound and the tactical decisions that resulted to be reasonable and not in error. For example, had the defense objected to the government's motion to change the date range, the military judge may have found it a minor change under Rule for Courts-Martial (R.C.M.) 603(c). Alternatively, the government could have preferred additional charges or preferred the impacted charges anew. *See* R.C.M. 603(d).

The fifth *Ginn* factor is also applicable to several of appellant's claims:

> [W]hen an appellate claim of ineffective representation contradicts a matter that is within the record of a guilty plea, an appellate court may decide the issue on the basis of the appellate file and record (including the admissions made in the plea inquiry at trial and appellant's expression of satisfaction with counsel at trial) unless the appellant sets forth facts that would rationally explain why he would have made such statements at trial but not upon appeal.

6

47 M.J. at 248.

Here, appellant now claims ineffective representation. As part of his affidavit, appellant states he never believed he blacked out, but testified otherwise to get the benefit of his deal. Appellant does not, however, address the specific evidence and nuances related to his guilty plea. For example, appellant made admissions in the stipulation of fact, a document which the military judge went over at trial and appellant stated was true. During his guilty plea, appellant also provided evidence for every element of every charge. Notably, appellant did not adopt all of SR's or JR's statements and instead rationally described which ones he believed.

Overall, appellant's affidavit does not provide a rational explanation as to why he would have repeatedly stated he believed certain evidence at his trial and was not coerced into pleading guilty, but has now changed his mind. It is not coercion for defense counsel to explain the risks, maximum punishment, and strength of the evidence. Additionally, appellant was represented by multiple attorneys: they filed motions, secured experts, and conducted appropriate preparation for a contested trial. There is no reason to believe that appellant was lying when he said he was satisfied with his representation at trial.

In this case, the military judge ensured that appellant understood his rights, the elements of the charges, potential defenses, and the evidence which supported the charges. We do not see the need for a hearing on the matter.

## CONCLUSION

On consideration of the entire record, the findings of guilty and the sentence are AFFIRMED.

Senior Judge MULLIGAN and Judge FEBBO concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court

7